UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DEVARY<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL SECURITIES CORPORATION and FORTE CAPITAL GROUP, INC.,<br><br><br><br>Defendants. | Civil Action No.<br><br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1. Plaintiff James DeVary alleges as follows:

## JURISDICTION AND VENUE

2. This Court has diversity of citizenship jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

3. Plaintiff James DeVary is an adult individual domiciled in the state of Arizona.

4. Defendant National Securities Corporation (hereinafter "National") is a financial advising firm incorporated in the state of Washington.

5. Defendant National has its principal place of business located at 200 Vesey Street, 25th Floor, New York, NY 10281.

6. Defendant Forte Capital Group Inc. (hereinafter "Forte") is a financial advising firm incorporated in the state of New York.

7. Defendant Forte has its principal place of business located at 80 Broad Street, Suite 2900, New York, NY 10004.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant National and Defendant Forte's principal place of business are located in this district.

9. Plaintiff will serve a copy of this Complaint upon an authorized representative of the Commissioner of Consumer and Worker Protection within ten days of commencement of this action.

## FACTUAL ALLEGATIONS

10. Roger Monteforte is the founder and Chief Executive Officer of Forte.

11. Plaintiff was retained by Forte as an independent contractor to provide services for compensation.

12. Plaintiff was retained as a financial advisor.

13. On or around January 2018, Plaintiff entered into an oral agreement with Roger Monteforte.

14. This oral agreement was entered into at Defendant Forte's office at 80 Broad Street in New York City.

15. The terms of the Agreement were:

   a. Plaintiff would receive a 3% carry on profitable SPV investments that paid out 100% to the rep.;

   b. For investments attributed to reps VRM and L08, Plaintiff would receive 69% of the gross commission paid to National outside of the carried interest; and then would receive 100% of the carried interest

      (which is 3% of the total profit earned by the investment);

    c. For Eqis investments, Plaintiff would receive 70% of the gross commission paid to National;

    d. For life insurance investments, Plaintiff would receive 70% of the gross commission paid to National;

    e. For investments attributed to the rep 3Q8, Plaintiff would receive 70% of the gross commission paid to National; and

    f. For investments attributed to Q56, Plaintiff would receive 69% of his half of the gross commission paid to National.

16. From January 2018 through January 2021, Plaintiff received monthly commission payments pursuant to the terms of this Agreement.

17. From January 2018 through January 2021, Plaintiff received the monthly commission payments from Defendant National.

18. From 2018 – 2020, Plaintiff was issued a from 1099 from National for the commission payments.

19. In the ordinary course, from January 2018-January 2021, during the first week of the month following the month in which commissions were earned, Defendant National sent Plaintiff his commission statement.

20. Plaintiff was able to verify his commission statement by cross referencing his numbers in the compnet computer system.

21. Plaintiff was responsible for requesting corrections to his commission statement before payroll.

22. From January 2018-January 2021, Defendant National Securities paid Plaintiff on the 15th of each month following the month in which his commissions were earned.

23. In October 2019, Plaintiff earned a 3% carry on profitable SPV investments.

24. The 3% carry on profitable SPV investments earned in October 2019 was paid to Plaintiff by Defendant National Securities in November 2019.

25. During a call on March 2, 2021, David Levine, Executive Vice President and Chief Sales Relationship Manager for Defendant National terminated Plaintiff's services.

26. During the March 2, 2021 call, Plaintiff requested his commission statement.

27. The commission statement was also known as a "run."

28. David Levine responded that he needed to get that information from Forte.

29. On March 7, 2021, David Levine emailed Plaintiff his February 2021 commission statement with the heading "Rep Sales Blotter Report For the Cycle From 2/01/2021 to 2/28/2021."

30. On March 10, 2021, David Levine emailed Plaintiff his March 2021 commission statement.

31. The February commission statement provided that Plaintiff's commission payment should have been $175,627.62.

32. The March commission statement provided that Plaintiff's commission payment should have been $1,841.33.

33. The February and March commission numbers were lower than Plaintiff's calculations.

34. By way of example only, the February 2021 commission statement:

    g. Fails to include the sale of Palantir stock for which Plaintiff was owed a 3% carry on profitable SPV investments that paid out 100% to the rep.

        i. On February 26, 2021, Roger Monteforte sold the Palantir stock.

        ii. Defendant National Securities used $31.91, the closing price on February 12, 2021 to determine the allocation of carried interest.

        iii. Defendant charged clients 10% carry interest based on a sale price of $31.91 per share.

        iv. Defendant National sold the Palantir stock at $26.33 per share.

        v. Upon information and belief, in February, every advisor except Plaintiff received a log (aka investor distribution share count) showing how many shares of Palantir his/her clients had in order to calculate the 3% carry.

        vi. On February 20, 2021, Plaintiff emailed Declan Mcquade, Executive Vice President, Forte, and requested his log (aka investor distribution share count).

        vii. Mr. Mcquade did not respond to the February 20, 20201 email.

        viii. On February 26, 2021, Plaintiff emailed Declan Mcquade again asking for his Palantir share

5

>   >   breakdown from client accounts and carry share amount for commission.
>   >
>   > ix. Mr. Mcquade did not respond to the February 26, 2021 email.
>   
>   h. Includes $23,805 commission to Plaintiff for Tanium instead of $66,240.
>   
>   >   i. The spreadsheet shows that Plaintiff's clients had $575,000 invested in Tanium.
>   >      1. 6% of $575,000 = $34,500 (gross commission). 69% of $34,500 = $23,805 (net commission).
>   >
>   >   ii. Plaintiff's clients had $3,200,000 invested in Tanium.
>   >      1. Plaintiff should have received credit for half because he shared the clients with another advisor. $1.2 X 6%= 96,000 (gross commission) and 96k x 69%= 66,240 (net commission).

35. On March 12, 2021, David Levin and Emily Hayes, counsel for Defendant National had a telephone call with Plaintiff.

36. Plaintiff did not raise a claim before or during this call.

37. During the March 12, 2021 call, David Levin said that if Plaintiff signed a waiver releasing both Defendant Forte and Defendant National from any customer disputes, they would pay him $171,000 immediately.

38. Defendant Forte's document titled "Forte Feb end of month payout" showed that Plaintiff was owed at least $191,505.24 from January 28, 2021 to February 24, 2021.

39. Plaintiff explained that his own calculations showed that he was owed more than $171,000.

40. Plaintiff explained that he is owed over $200,000 just on the Palantir carry.
41. Plaintiff also explained that he had tracked client money movement of $3.2 Million being invested in Tanium SPV and that would generate a net payout to him of $66,240.
42. David Levine told Plaintiff that $2,200,000 of the $3,200,000 was not closed on, *i.e.*, the investment was not actually made.
43. Plaintiff told David Levine that Plaintiff's calculations were based on the money flow notifications that Plaintiff received from Fidelity (the clearing firm).
44. Plaintiff asked David Levine to pull the spreadsheets that Plaintiff made that were on Defendant's computer system (that Plaintiff no longer had access to) so that they could review each transaction.
45. David Levine said that he would ask Forte management.
46. David Levin told Plaintiff that the offer for $171,000 was take it or leave it.
47. Plaintiff declined the offer.
48. David Levine never gave Plaintiff the spreadsheets requested on the March 12 call.
49. Defendants have not paid Plaintiff for any commissions earned in February and/or March 2021.
50. Defendants have willfully refused to pay Plaintiff for commissions earned in February and/or March 2021.

51. For all of 2018, Plaintiff worked in Defendant Forte's office at 80 Broad Street, New York, NY 10004.

52. From January 2018 through March 2, 2021, Plaintiff's designated branch office was 80 Broad Street.

53. In 2019, Plaintiff requested permission to work remotely from Arizona.

54. Defendant National provided that Plaintiff may work remotely from Arizona with the "limitation[s]" that his "designated branch office" "must be reflected on all business cards, stationary, advertisements and other communications to the public."

55. Defendant National provided that Plaintiff may work remotely from Arizona with the "limitation[s]" that "[a]ll orders must be entered through the designated branch office or through an electronic system (i.e. Wealthscape) approved by the member."

56. Defendant approved the request and Plaintiff began working remotely in November 2019.

57. From January 2018 through March 2, 2021, Plaintiff's business card listed 80 Broad Street, New York, NY as his business address.

58. From January 2018 through March 2, 2021, Plaintiff's business cards were ordered by Justine Fiore, Registered Executive Assistant in Forte's New York office.

59. From January 2018 through March 2, 2021, Declan Mcquade reviewed and approved Plaintiff's business cards.

60. Plaintiff had no control over the look or content of his business card.

61. From January 2018 through March 2, 2021, Damian Defex, Managing Director at Forte, and Declan Mcquade conducted daily 9 am morning meetings for all advisors including Plaintiff.

62. The advisors' attendance at the morning meeting was mandatory.

63. Attendance was taken at the morning meetings.

64. Plaintiffs' attendance at the morning meetings was mandatory.

65. From January 2018 through November 2019, Plaintiff attended the 9 am morning meeting in person.

66. From November 2019-March 2020, Plaintiff attended the morning meetings by phone.

67. When the Covid-19 global pandemic began, all advisors began to work remotely and attended the morning meeting via Zoom audio.

68. After a few weeks, all advisors were told to attend the meeting via Zoom video.

69. Advisors were instructed to attend the meeting using their computers so that management could take attendance (management did not know every advisor's phone number).

70. From January 2019 through March 2, 2021, Plaintiff attended the 9 am daily meeting in the New York office via zoom along with the rest of the financial advisors.

71. From January 2018 through March 2, 2021, Plaintiff's email signature reflected 80 Broad Street, New York, NY as his business address.

72. From January 2018 through March 2, 2021, Plaintiff entered all equity trades through the Wealthscape system.

73. From January 2018 through March 2, 2021, Plaintiff sent all alternative investments (private shares, sunstone, preferred apartments etc.) to Declan Mcquade, Executive Vice President, Forte, for approval.

74. Once Declan Mcquade approved the investment, Justine Fiore filled out subscription documents for the investment.

75. Once the subscription documents were filled, they were sent to clients to sign.

76. Once the clients signed the subscription documents, they were sent to Declan Mcquade for final approval and then submitted for investment.

77. While working remotely from Arizona, Plaintiff opened new client accounts by sending the client's information to Kevin Young, Compliance Officer at Forte.

78. Kevin Young reviewed the information and decided if to approve or deny opening the account.

79. While working remotely from Arizona, Plaintiff contacted Manuel Klemm at Forte's NY office for help with any technical issues.

80. While working remotely from Arizona, Plaintiff attended the New York office's update meetings on covid policy.

81. While working remotely from Arizona, Plaintiff attended the New York office's private shares innovation x meetings.

82. While working remotely from Arizona, Plaintiff regularly conferred with employees in the New York office to brainstorm on business matters.

83. While working remotely from Arizona, Plaintiff's business phone number remained the same phone number with a 212 area code.

84. Forte capital's website asserts that Forte Capital is not affiliated with National Securities Corporation.

85. Plaintiff was supervised by Roger Monteforte, Declan Mcquade EVP, Kevin Young OSJ principal, and Damian Defex Managing Director.

86. Plaintiff was reviewed by Damian Defex.

87. In February and March 2021, Plaintiff's principal activity was the selling of investments whose earnings were based in whole or in part on commissions.

88. From November 2019 – March 2, 2021, Plaintiff did not supervise any employees or contractors at Forte or National.

89. Defendants failed to pay Plaintiff over $300,000 in commissions earned in February and March 2021.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FREELANCE ISN'T FREE ACT**
**NEW YORK CITY ADMIN. CODE §§ 20-928 and 20-929**

90. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

91. Plaintiff was a freelance worker.

92. Defendant Forte was a hiring party.

93. Defendants failed to use a written contract with Plaintiff.

94. Defendant National paid Plaintiff for services provided pursuant to Plaintiff's oral agreement with Roger Monteforte.

95. Defendants Forte and National failed to pay Plaintiff commissions earned pursuant to their oral agreement.

96. Defendants failed to pay Plaintiff commissions that were earned in February 2021 and due on March 15, 2021.

97. Defendants failed to pay Plaintiff commissions that were earned in March 2021 and due on April 15, 2021.

98. After Plaintiff commenced performance of his services, Defendant National required as a condition of timely payment that Plaintiff accept less compensation than the amount of the contracted compensation.

99. Plaintiff seeks statutory damages equal to the value of the underlying contract for the violation of § 20-928 in addition to double damages, reasonable attorney's fees, costs, interest, injunctive relief and other such remedies as may be appropriate.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 191(1)(c)

100. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

101. Plaintiff was a commission salesperson.

102. Defendants Forte and National were joint employers.

103. Defendants failed to pay Plaintiff monies earned in accordance with the agreed terms of employment.

104. Defendants failed to reduce the agreed terms of employment to writing, signed by both the employer and the commission salesperson.

105. Plaintiff seeks his unpaid commissions, liquidated damages of 100%, interest, attorney's fees, court costs, and disbursements and such other legal and equitable relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW § 191(3)

106. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

107. Plaintiff was a commission salesman for Defendants.

108. Defendants Forte and National were joint employers.

109. Defendants terminated Plaintiff's employment.

110. After Plaintiff's termination, Defendants failed to pay Plaintiff his wages within the next regular pay day.

111. Plaintiff seeks his unpaid wages, liquidated damages, interest, attorney's fees, court costs, and disbursements and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW § 193

112. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

113. Plaintiff was employed by Defendants.

114. Defendants Forte and National were joint employers.

115. Defendants deducted Plaintiff's commissions.

116. Plaintiff seeks his unlawful deductions, liquidated damages, interest, attorney's fees, court costs, and disbursements and such other legal and equitable relief as this Court deems just and proper.

## FIFTH CAUSE OF ACTION
### (Breach of Contract)

117. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

118. Plaintiff had an oral agreement with Defendants to be paid for services.

119. Defendants Forte and National were joint employers.

120. Defendants failed to pay Plaintiff for his services.

121. Plaintiff seeks payment for his services, plus interest and costs.

## SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

122. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

123. Defendants Forte and National were joint employers.

124. Because Plaintiff performed services for Defendants with the expectation and understanding that he would be compensated for his work fairly, and instead Defendants retained for themselves wages that were legally required to be paid to Plaintiff, equity and good conscience require that Plaintiff receive restitution from Defendants.

125. As a consequence of Defendants' aforesaid actions, they have been unjustly enriched at Plaintiff's expense, and Plaintiff is entitled to recover from Defendants, jointly and severally, all damages and remedies provided for by law, including, *inter alia*, all wrongfully withheld compensation, plus interest, costs, and attorneys' fees.

### SEVENTH CLAIM FOR RELIEF
(Quantum Meruit)

126. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

127. Defendants Forte and National were joint employers.

128. Defendants requested service from Plaintiff.

129. Plaintiff performed the requested services in good faith.

130. Defendants received a benefit from Plaintiff's services.

131. Because Plaintiff performed services for Defendants with the expectation and understanding that he would be compensated for his services fairly, and instead Defendants retained for themselves wages that were legally required to be paid to Plaintiff, it would be unjust for the Defendants to retain the benefits of Plaintiff's services without paying him

for those services and Plaintiff is entitled to recover from Defendants, jointly and severally, all damages and remedies provided for by law, including, *inter alia*, all wrongfully withheld compensation, plus interest, costs, and attorneys' fees.

### EIGHTH CLAIM FOR RELIEF
### UNPAID WAGES
### (A.R.S. § 23-355)

132. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

133. Defendants Forte and National were joint employers.

134. Plaintiff was an employee.

135. Defendants failed to pay Plaintiff his earned commissions/wages.

136. Plaintiff seeks his unpaid wages, treble damages, attorney's fees, plus interest and costs.

### NINTH CLAIM FOR RELIEF
### WITHHELD WAGES
### (A.R.S. § 23-352)

137. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

138. Defendants Forte and National were joint employers.

139. Plaintiff was an employee.

140. Defendants withheld Plaintiff's wages.

141. Defendants Forte and National were joint employers.

142. Defendants did not act in good faith.

143. Plaintiff seeks his withheld wages, treble damages, attorney's fees, plus interest and costs.

### TENTH CLAIM FOR RELIEF
### (A.R.S. § 23-353)

144. Plaintiff repeats and realleges all paragraphs above as though fully set forth herein.

145. Defendants Forte and National were joint employers.

146. Plaintiff was an employee.

147. Defendants terminated Plaintiff's employment.

148. Defendants failed to pay Plaintiff his wages within seven working days of the termination.

149. Defendants did not act in good faith.

150. Plaintiff seeks his withheld wages, treble damages, attorney's fees, plus interest and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendants and grant the following relief:

1. An award of damages, according to proof, including liquidated damages, and treble damages to be paid by Defendants;

2. Attorneys' fees, costs, interest and such other and further relief as the Court may deem just, equitable, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to jury trial.

Dated: September 21, 2021                The Goldring Firm

/s/
_____
Orit Goldring

40 Fifth Avenue
New York, NY  10011
Tel:  212.844.9308

Attorneys for Plaintiff
James DeVary