UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES DEVARY,<br><br>                           Plaintiff,<br><br>v.<br><br>NATIONAL SECURITIES CORPORATION, et al.,<br><br>                           Defendants. | 21 Civ. 7869 (DEH)<br><br>**AMENDED<br>MEMORANDUM OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

In this action, Defendant Forte Capital Group, Inc. ("Forte") moves to vacate those portions of an arbitration award ("Award") issued by a three-member panel of the Financial Industry Regulatory Authority ("FINRA") against it. For the reasons set forth below, Forte's motion is **DENIED**. Plaintiff James DeVary's ("DeVary's") cross-motion to confirm the arbitration award is **GRANTED**.

## BACKGROUND

The following facts are taken from the sworn declarations of the parties' counsel and attached exhibits, including the Award.

Plaintiff James DeVary was a registered representative, or stockbroker, of National Securities Corporation ("National"), Day Five Tr. 1239:12-14, ECF No. 29-10; Forte Pre-Hearing Br. 1, ECF No. 26-6, and held the title of Senior, or Executive, Vice President at Forte, Day One Tr. 103:12-13, ECF No. 26-8; DeVary Pre-Hearing Br. 1, ECF No. 26-7. In those capacities, he worked as a financial advisor who sold investments and earned commissions. Statement of Claim ¶¶ 8, 9, 84, ECF No. 32-6.

National was[1] and Forte is a financial advising firm. *Id.* ¶¶ 3, 5. During the relevant period, National was a registered securities broker-dealer, while Forte was not. *See* Mem. in Supp. Mot. to Vacate ("Forte's Br.") 4, ECF No. 26-1. The firms were separate entities in a contractual relationship, with Forte registered as a branch office of National. Day One Tr. 36:6-15, 37:6-8. National retained DeVary's commissions, and then paid DeVary a percentage of the revenue generated by his transactions. Nacht Decl. ¶¶ 5-6, ECF No. 29; Day One Tr. 50:2-8. Forte, which was not a registered broker-dealer, was not legally authorized either to sell securities or to pay DeVary commissions. Forte's Br. 6, 8-9 (citing 15 U.S.C. §78o(a)(1); Nacht Decl. ¶¶19, 20, Ex. 15, at 2-18, 16-17; Ex. 18, at 2-3; Ex. 21, at 1-3).

Forte places in dispute the nature of its relationship with DeVary. The record reflects that DeVary worked out of the Forte branch office, Day One Tr. 155:21-24, where he was required to adhere to office policies and procedures, *see, e.g.*, *id.* at 113:5-25 (dress code); *id.* at 121:12-25 (letterhead); *id.* at 114:17-21, 130:25-131:2-5 (mandatory meetings and trainings). DeVary reported to Forte supervisors, *id.* at 98:8-16, 122:23-123:3, 144:4-6, 156:16-23; received performance reviews from Forte, *id.* at 146:11-18; offered only Forte's selected products to investors unless Forte gave him permission to do otherwise, *see id.* at 134-40; was required to pay for certain Forte services, *id.* at 132:20-22 (technology charge); *id.* at 134:2-7 (marketing charge); and had to obtain approval from Forte to open accounts, *id.* at 137:24-138:2, fund accounts, *id.* at 156:24-157:9, work remotely, *id.* at 153:25-154:12, and update his LinkedIn profile, *id.* at 107:12-25.

---

[1] National is no longer an operational broker-dealer. Day One Tr. 36:16-17.

During a March 2, 2021 call, National terminated DeVary's services. Statement of Claim ¶ 22. On September 21, 2021, DeVary filed suit against National and Forte, alleging, *inter alia*, that the firms failed to pay DeVary over $300,000 in commissions earned from February 1, 2021, to March 2, 2021. *See* Compl., ECF No. 1; DeVary Pre-Hearing Br. 1. On December 20, 2021, the Court granted the parties' proposed order to stay all proceedings pending the parties' FINRA dispute resolution arbitration proceedings, pursuant to the terms of the parties' arbitration agreement. Letter, ECF No. 11; Stipulation, ECF No. 12. DeVary filed his Statement of Claim with FINRA on January 7, 2022, setting forth ten counts seeking compensatory and liquidated damages and attorney's fees under the New York Labor Law. Nacht Decl. ¶ 11. On or around March 8, 2022, National filed its Statement of Answer. *Id.* ¶ 12. On or around March 25, 2022, Forte filed its Statement of Answer. *Id.* ¶ 13.

A three-member FINRA panel ("the Panel") conducted a five-day hearing, at which testimony and evidence were elicited. *See id.* ¶ 15. On June 15, 2023, the Panel held in relevant part:

> 1. [National] is liable for and shall pay to [DeVary] the sum of $227,656.40 in compensatory damages.
>
> 2. [National] is liable for and shall pay to [DeVary] interest on the above-stated sum at the rate of 10% per annum from March 15, 2021 through and including the date of payment on the award in full or confirmation of the Award by a court of competent jurisdiction.
>
> 3. Forte is liable for and shall pay to [DeVary] the sum of $227,656.40 in statutory damages pursuant to § 198(1-a) of the New York Labor Law.
>
> 4. Forte is liable for and shall pay to [DeVary] the sum of $105,000.00 in attorneys' fees pursuant to Art. 6 § 198(1-a) of the New York Labor Law.
>
> 5. [National and Forte] are jointly and severally liable for and shall pay to [DeVary] $400.00 to reimburse [DeVary] for the nonrefundable portion of the filing fee previously paid to FINRA Dispute Resolution Services.
>
> 6. Any and all claims for relief not specifically addressed herein, including any requests for punitive damages and treble damages, are denied.

Award 3, ECF No. 32-2.  The New York Labor Law ("NYLL") provision cited by the Panel holds in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner **in which the employee prevails**, the court shall allow such employee to recover the full amount of any underpayment, all **reasonable attorney's fees**, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as **liquidated damages** equal to one hundred percent of the total amount of the wages found to be due.

NYLL §198(1-a) (emphases added).

Forte filed the underlying motion on July 21, 2023, urging the Court to vacate the portions of the Award held against it, pursuant to the Federal Arbitration Act ("FAA") §§ 10 and 11[2] and/or New York Civil Practice Law and Rule ("CPLR") § 7511.  *See* Forte's Br. 1.[3]

## LEGAL STANDARDS

The parties do not dispute that the FAA provides the relevant legal standard. They do, however, dispute the applicability of the CPLR.  *See* Pl.'s Opp'n 16 (denying the applicability of

---

[2] Section 11 "allows a court to make an order modifying or correcting the [contested] award where the award is imperfect in matter of form not affecting the merits of the controversy." *Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*, 57 F.4th 372, 382 (2d Cir. 2023).  The relevant inquiry under this provision is whether the Award was "reasoned." *See id.* Generally, "[t]he arbitrator's rationale for an award need not be explained." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  However, "a reasoned award is required" where the parties' agreement "called for the arbitrator to provide a reasoned award." *Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-Coll. of Med.*, 826 F.3d 634, 638-39 (2d Cir. 2016). Here, the Panel provides no explanation of its decision.  *See* Award.  DeVary explains that this is "because the parties did not request [the Award] to be explained[,] as required by Rule 13904(g)[] of FINRA's Code."  Pl.'s Opp'n 12, ECF No. 31.  Forte does not contest this assertion, *see generally* Forte's Reply, ECF No. 38, and the Court finds nothing in the record to undermine it.  At any rate, Forte styles its arguments not in the language or caselaw of Section 11, but in that of Section 10(a)(4).  *See generally* Forte's Br. & Reply.  Accordingly, the Court concludes that Section 11 is inapplicable and limits its analysis to applying Section 10 to the facts of this case.

[3] This case was reassigned to the undersigned on October 15, 2023.

4

CPLR 7511); Forte's Reply 4 (defending the applicability of CPLR 7511). Ultimately, it is unnecessary to decide which law applies. For the reasons discussed below, the petition to vacate fails under either standard.

The Court's review of arbitration awards "is very limited in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021). [4] "There is little practical difference between the standards applied by the CPLR and the FAA to the question of whether an arbitral award should be vacated. Under either standard, judicial review of arbitration awards is deferential, limited and narrowly circumscribed." *Flintlock Constr. Servs., LLC v. Arch Specialty Ins. Co.*, No. 23 Civ. 1701, 2024 WL 863700, at *3 (S.D.N.Y. Feb. 29, 2024) (citing *Seneca Nation of Indians v. New York*, 988 F.3d 618, 625 (2d Cir. 2021) (FAA); *In re Falzone (N.Y. Cent. Mut. Fire Ins. Co.)*, 939 N.E.2d 1197, 1198-99 (N.Y. 2010) (CPLR)). "Both sources of law provide that an arbitral award may be vacated if: (1) the arbitrator was partial, (2) the award was procured by corruption or fraud[,] (3) the arbitrator was guilty of misconduct or (4) the arbitrator exceeded his or her power." *Id.* at *3 (citing 9 U.S.C. § 10(a); CPLR § 7511(b)(1)). Under either statute, there is a strong presumption in favor of enforcing an arbitration award. *See Goldfinger v. Lisker*, 500 N.E.2d 857, 860 (N.Y. 1986) ("[C]ourts generally will not interfere with the judgment of arbitrators.") (CPLR); *Smarter Tools Inc.*, 57 F.4th at 382-83 (holding that "an award is presumed valid" and must be confirmed so long as there is a "barely colorable justification for the outcome reached.") (FAA).

---

[4] In all quotations from cases, internal quotation marks, brackets, citations, ellipses, footnotes, and emphases are omitted unless otherwise indicated.

At issue in this case is whether the Panel exceeded its power in granting a portion of the Award against Forte.  "[A]rbitrators exceed their power within the meaning of the CPLR only when they issue an award that violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power."  *Am. Int'l Specialty Lines Ins. Co. v. Allied Cap. Corp.*, 149 N.E.3d 33, 37 (N.Y. 2020).  Courts in the Second Circuit have "consistently accorded the narrowest of readings to [FAA] Section 10(a)(4)."  *Smarter Tools Inc.*, 57 F.4th at 382.  For example, courts have held that "arbitrators exceeded their powers by determining the rights of a corporation not party to the arbitration . . . or [by granting an] award[] for events not governed by the arbitration agreement."  *Id.* (citing cases).  The focus of the inquiry is on "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue."  *Id.*  It is not, however, the role of this Court to determine "whether the arbitrators correctly decided that issue."  *Id.*

## DISCUSSION

Forte raises three arguments in support of vacatur, arguing that the Award against it was: (1) issued in manifest disregard of the law, Forte's Br. 11-16; (2) irrational, *id.* at 16-19; and (3) contrary to public policy, *id.* at 20-25.  For the reasons discussed below, none prevail.[5]

### 1. Whether the Panel's Decision was in Manifest Disregard of the Law

Forte first argues that "the Panel committed a manifest disregard of the law in awarding DeVary statutory liquidated damages and attorneys' fees."  Forte's Br. 11.  Courts have "emphasized that the reach of the manifest disregard doctrine is severely limited.  Indeed,

---

[5] As a preliminary matter, DeVary argues, with no citation to any caselaw, that because Forte filed this motion over 30 days after the Award was published, its motion is untimely.  Pl.'s Opp'n 5.  DeVary is wrong.  The FAA and CPLR expressly provide a three-month/ninety-day period to move to vacate an arbitration award.  *See* 9 U.S.C. § 12; N.Y. C.P.L.R. 7511.

[courts] have cautioned that manifest disregard clearly means more than error or misunderstanding with respect to the law." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997). [6] To succeed in challenging an award under this doctrine, a party must prove a subjective and an objective element:

> [First, to establish the subjective component, the party must establish that] the arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it . . . . [Next,] a finding of manifest disregard requires an objective determination that the disregarded legal principle was well defined, explicit, and clearly applicable.

*Seneca Nation of Indians*, 988 F.3d at 626.

Forte's position may, in essence, be summed up as follows. Under the NYLL, before the Panel could grant DeVary liquidated damages against Forte, the Panel was purportedly required to find (1) that Forte underpaid DeVary, and (2) that Forte failed to demonstrate good faith in underpaying him. *See* Forte's Br. 14. Because the Panel held National, not Forte, liable for *compensatory* damages, it found that only National was guilty of underpaying DeVary, and it thereby "exonerated [Forte] of any obligation to pay DeVary." *Id.* at 11-12. Accordingly, DeVary did not "prevail on his wage claim" against Forte for the purposes of the NYLL, *see id.* at 12; rather, because it owed no compensatory damages, Forte believes that *it* prevailed *against* DeVary. *See id.* at 13-14. As the prevailing party, Forte purportedly could not be held liable for

---

[6] A "manifest disregard of the law" claim recites "the federal [FAA], not state [CPLR], standard for whether an arbitrator has so far exceeded the scope of authority that the award should be overturned." *Cnty. of Nassau v. Chase*, 402 F. App'x 540, 542 (2d Cir. 2010); *but see Schiferle v. Cap. Fence Co.*, 155 A.D.3d 122, 128, 61 N.Y.S.3d 767, 772 (2017) ("Given our high Court's unanimous adoption of the manifest disregard standard under the Federal Arbitration Act . . . , we see no reason to reject the manifest disregard standard under the identically-worded provision of CPLR 7511(1)(b)(iii)."). Again, the Court need not decide if CPLR 7511 applies, because Forte's claims fail under either standard.

7

liquidated damages and attorney's fees under the NYLL, and the Panel's award against it was issued in manifest disregard of the law. *See id.* at 12-14.

Notably absent from Forte's briefing is any attempt to establish the subjective element of the manifest disregard test, i.e., that the "arbitrators knew of the relevant legal principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Seneca Nation of Indians*, 988 F.3d at 626. Its argument fails on that basis alone. *See id.* (holding that both the subjective and objective elements of the test must be met).

Forte also fails to establish the objective element of the manifest disregard test. Forte's argument hinges on its belief that because the Panel did not hold Forte liable for paying compensatory damages to DeVary, it "did not find Forte to be in violation of the NYLL." Forte's Br. 12. But it is not a clear and controlling principle that the Panel must hold an employer liable for compensatory damages before it may hold it accountable for paying statutory damages and attorney's fees. Indeed, Forte cites no authority stating that it is. And even if it could, a showing that the Panel made an error or mistake in applying the law would still be insufficient on its own to justify vacatur. *See DiRussa*, 121 F.3d at 821 ("[M]anifest disregard clearly means more than error."). Because Forte fails to demonstrate that the Panel—willfully or otherwise—flouted any "well defined, explicit, and clearly applicable" legal principle, Forte's manifest disregard theory fails. *See Seneca Nation of Indians*, 988 F.3d at 626.

**2. Whether the Panel's Decision was Irrational**

Forte next argues that "[t]he Award should also be vacated because it is irrational to hold Forte liable for derivative statutory damages under a statute [according to which] it had no underlying liability." Forte's Br. 16. Forte offers two theories in support of its argument: (1) the

8

Panel had "absolved Forte of any wrongdoing" when it declined to hold it liable for compensatory damages, and (2) because National alone was legally able to pay commissions to DeVary, only National committed misconduct, as "statutory damages under the NYLL are dependent on failing to pay wages." Forte's Br. 17. Neither theory supports Forte's claim that the Award against it was irrational.

First, there is no basis for Forte's assertion that the Panel absolved Forte of any wrongdoing under the NYLL. It did. *See* Award (expressly describing Forte as "liable"). That the Panel did not hold Forte liable specifically for compensatory damages does not somehow render Forte absolved of any wrongdoing; on the contrary, "liquidated damages under the NYLL are considered *punitive* in nature." *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 243 (S.D.N.Y. 2020) (emphasis added), *R. & R. adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021). Thus, in awarding liquidated damages against Forte, the Panel expressly found it liable for wrongdoing.

Second, it goes without saying that the NYLL applies where there is an employer-employee relationship. *See generally* NYLL; *see also Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 507 (S.D.N.Y. 2015) (assessing the economic reality of the purported employer and employee to determine the applicability of the NYLL). While it is true that National, not Forte, paid DeVary, that fact is not dispositive. "[T]he crucial inquiry" in determining whether an employer-employee relationship exists assesses the "degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Burns v. Scott*, 635 F. Supp. 3d 258, 275 (S.D.N.Y. 2022). Here, there is ample evidence in the record that Forte exercised a degree of control over DeVary. *See supra* Background (collecting citations from the record discussing DeVary's role at Forte). The Panel evidently found this

9

record sufficient to hold Forte liable as an employer under the NYLL for DeVary's damages, and it is not this Court's role to second-guess that determination. *Smarter Tools Inc.*, 57 F.4th at 382 (explaining the relevant inquiry is not whether "the arbitrators correctly decided [an] issue.").

Again, the NYLL states that where an employee prevails on a wage claim, the employee is entitled to "recover the full amount of any underpayment, all reasonable attorney's fees, . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL §198(1-a). Here, the Panel ruled that DeVary prevailed in his wage claim against his employers and was entitled to recover the "full amount of his underpayment" from National, in addition to an equal amount in statutory liquidated damages, plus attorney's fees, from Forte. *See* Award. Forte fails to establish any grounds on which the Court may vacate the Award as irrational.

### 3. Whether the Panel's Decision was Contrary to Public Policy

Lastly, Forte argues that enforcement of the Award against it violates public policy. The Court may vacate an arbitration award on this ground only when confirmation would "violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987). "This rarely-used ground for reversal derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act" and requires "[t]he party seeking to prevent enforcement of the award [to] clearly show a violation of public policy." *DiRussa*, 121 F.3d at 824-25.

Forte claims that the Award against it conflicts with FINRA and SEC rules, which hold in relevant part that no FINRA member may pay "any person that is not registered as a broker-dealer under Section 15(a) of the Exchange Act," and unregistered entities may not conduct securities businesses. *See* Forte's Br. 20 (citing SEC 15(a)(1), FINRA 1200, *et seq*, and FINRA 2040). Forte essentially argues that the Panel, in contravention of public policy, issued an award that (1) forced it, a non-FINRA member, to commit an illegal act by paying damages to DeVary, a registered broker-dealer, *see id*. at 23 ("[T]he Panel purported to impose obligations" on Forte, a branch office of National, in "violat[ion of] the [SEC] and FINRA Rule 2040"); and (2) "held Forte liable for statutory damages as DeVary's employer . . . in a case where it was illegal for DeVary to perform the services at issue for Forte." *Id.* at 24.

Forte's arguments are not grounded in the facts. The Panel expressly did not require Forte to pay DeVary wages in contravention of the law; indeed, as Forte itself emphasizes throughout its pleadings, the Panel did not require it to pay compensatory damages. *See* Award. Nor did the Panel issue any finding that DeVary illegally performed securities transactions for Forte. *See generally id.* Here, the Panel evidently found, "[a]fter considering the pleadings, the testimony and evidence presented at the hearing, and any post-hearing submissions," *id.* at 3, that as an employer for the purposes of the NYLL, Forte was required to pay punitive liquidated damages as well as attorney's fees to DeVary, the prevailing party. Forte fails to "clearly show a violation of public policy" sufficient to vacate the Award. *DiRussa*, 121 F.3d at 824-25.

11

## CONCLUSION

For the foregoing reasons, Forte's motion to vacate the Award is **DENIED**. As there is at least a "barely colorable justification for the outcome reached," *Smarter Tools Inc.*, 57 F.4th at 383, DeVary's cross-motion to confirm the Award is **GRANTED**.

The Clerk of Court is directed to terminate ECF No. 26.

SO ORDERED.

Dated: March 27, 2024
New York, New York

_____
DALE E. HO
United States District Judge

Per the terms of the FINRA Arbitration Award:

- Forte is liable for and shall pay to Claimant the sum of $227,656.40 in statutory damages pursuant to § 198(1-a) of the New York Labor Law;
- Forte is liable for and shall pay to Claimant the sum of $105,000.00 in attorneys' fees pursuant to Art. 6 § 198(1-a) of the New York Labor Law;
- Respondents (including Forte) are jointly and severally liable for and shall pay to Claimant $400.00 to reimburse Claimant for the nonrefundable portion of the filing fee previously paid to FINRA The Clerk Dispute Resolution Services.

See ECF No. 22-1.  The Clerk of Court is requested to close ECF No. 55.  SO ORDERED.

Dated: October 7, 2024
New York, New York

_____
Dale E. Ho
United States District Judge